#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENNIS HAWVER, )  |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | No. 5:14-cv-04084-DGK |
| ) |  |
| LAWTON R. NUSS, et al., ) |  |
| ) |  |
| Defendants. ) |  |

### ORDER GRANTING MOTION TO DISMISS

This lawsuit arises out of Plaintiff Dennis Hawver's disbarment by the Kansas Supreme Court for "inexplicable incompetence" in defending a client against capital murder charges. After the Kansas Supreme Court's action, the federal district court for the District of Kansas subsequently ordered Plaintiff to show cause why it should not impose reciprocal discipline pursuant to D. Kan. Rule 83.6.4. Plaintiff then filed the pending lawsuit, seeking to stave off his Kansas disbarment and any reciprocal discipline. Plaintiff is suing the members of the Kansas Supreme Court, the Kansas Attorney Discipline Administrator, the Kansas Attorney Discipline Prosecutor, members of the Kansas Board of Discipline for Attorneys, and the chief judge of the Kansas District Court for injunctive relief and damages.

Now before the Court is a motion by Defendants' Stanton Hazlett, Alexander Walczak, Patricia Dengler, John Gatz, J. Nick Badgerow, Kimberly Bonifas, M. Jennifer Buneti, Jeffrey Chubb, John Conderman, Dennis Depew, Shaye Downing, John Duma, Randall Grisell, Calvin Karlin, Kathryn Marsh, Jack Scott McInteer, Mira Mdivani, Arthur Palmer, Phillip Ridenour, Rex Sharp, and Lee Smithyman (collectively "the State Disciplinary Proceeding Defendants") to

dismiss (Doc. 14) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Finding that Plaintiff's claims lack facial plausibility, the motion is GRANTED for failure to state a claim.[1]

## Standard of Review

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The court generally ignores materials outside the pleadings but may consider materials—such as public records of disciplinary proceedings—that are part of the public record or materials that are necessarily embraced by the pleadings. *See Peterson v. Saperstein*, 267 F. App'x 751, 754 (10th Cir. 2008).

---

[1] The Court declines to rule on the balance of Defendants' arguments because Plaintiff's briefing does not sufficiently address the issues so that the Court enjoys the benefit of adversarial briefing on these claims, several of which involve complex abstention issues. Adversarial briefing on these issues is important because Defendants' arguments, if accepted, would arguably expand the reach of various abstention doctrines. For example, Defendants argue that although Plaintiff filed this lawsuit *before* the Kansas Supreme Court ordered his disbarment, the *Rooker-Feldman* doctrine still bars Plaintiff's claims. *See* Memo. in Supp. (Doc. 15) at 17; Reply (Doc. 22) at 4-5. This argument arguably conflicts with the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) (holding that the doctrine is limited to preventing federal courts from reviewing state court proceedings completed before the federal case was filed). It is unclear if Plaintiff is aware of the *Exxon* case; his brief fails to cite it by name. This failure to address Defendants' arguments is problematic because if the Court embraced Defendants' position, litigants in future cases might cite the Court's decision without realizing that it was reached without the benefit of adversarial briefing.

**Background**

According to the report issued by the Kansas Board for Discipline of Attorneys—whose factual findings and disciplinary recommendation were accepted by the Kansas Supreme Court, *see In re Hawver*, 339 P.3d 573, 588-89 (Kan. 2014)—Defendants pursued disciplinary charges against Plaintiff because his conduct violated numerous ethical rules.  For example, Plaintiff violated Kansas Rule of Professional Conduct 1.1 by failing to competently represent his client in the client's capital murder case.  *Id.* at 584, 589.  Among other things: Plaintiff agreed to represent his client in a capital murder case despite not having tried a murder case in twenty years and having no experience in death penalty cases; Plaintiff did not arrange for co-counsel, an investigator, or a mitigation specialist to assist him (he actually refused free assistance offered by the Board of Indigent Defense Services); Plaintiff was so uneducated about death penalty cases that he did not understand that capital cases are divided into separate guilt and penalty phases; and during closing argument in the sentencing phase—after the jury had concluded his client was guilty of the murders—Plaintiff told the jury that the killer should be executed.  *Id.* at 577-78.  An affidavit Plaintiff submitted to a state trial court investigating whether his client should receive a new trial confirmed many of the facts found by the investigatory panel and Supreme Court.  For example, Plaintiff acknowledged that he failed to conduct any penalty phase investigation, that his performance "was below any reasonable professional standard" set out in the ABA guidelines for the appointment and performance of defense counsel in a capital case, and that he "used a flawed and prejudicial argument in the penalty phase . . . [which] was clearly prejudicial to my client."  *Id.* at 579-82.

In the Complaint (Doc. 1), Plaintiff tells a different story why he was disbarred.  The Complaint contends the members of the Kansas Supreme Court delivered the disciplinary complaint to the Kansas Attorney Discipline Administrator, Defendant Stanton Hazlett

("Hazlett"), and the members of the Kansas Board for Discipline of Attorneys ("the Board members"), who are all named Defendants. Compl. at ¶ 31. The Board members, acting "out of animus and prejudice against the plaintiff Dennis Hawver for his protected speech," abandoned their duty to independently evaluate the ethics complaint by finding probable cause to prosecute Plaintiff. *Id.* Plaintiff contends the State Disciplinary Proceeding Defendants initiated these proceedings to retaliate against him for his testimony as a witness in his client's appeal and for following his client's instructions at trial. *Id.* at ¶ 2. Plaintiff claims the State Disciplinary Proceeding Defendants followed an "order" issued by the justices of the Kansas Supreme Court to prosecute him. *Id.* at ¶ 11. He asserts that "the subsequent lockstep following of the bosses' (the Kansas Supreme Court's) orders, shows that the Disciplinary Counsel and his hand-picked disciplinary tribunal know where their bread is buttered, and in standard political fashion, understand that they had better do as they are told, or incur the bosses' ire." *Id.*

The Complaint expresses doubt that Plaintiff received due process from the Board members, citing "conflicting and invalid evidence" whether other "similarly situated" disbarred attorneys had received due process from the Defendants in their disciplinary hearings. *Id.* at ¶ 32. The Complaint then spends several pages reciting the alleged experiences of these other attorneys, focusing particularly on Hazlett's role. The following is a representative example. The Complaint asserts Hazlett:

> initiated the bad faith prosecution of Keen Umbehr (presently the Libertarian candidate for Kansas governor) for seeking to effectively represent the federal statutory civil rights of a female prison inmate who was raped and had her rights violated by members of the corrupt narcotics conspiracy that caused [Plaintiff's client in the capital murder case] to be prosecuted.

*Id.* at ¶ 34. Hazlett did so because the Chief Justice of the Kansas Supreme Court and the State of Kansas Prisons Administrator wanted to protect "illegal narcotics trafficking and rights

4

violations from being discovered." *Id.* at ¶ 35.  Hazlett stopped this bad faith prosecution only because the Chief Justice "discovered that through his wife's family, Keen Umbehr had connections to a powerful East Coast law firm that is closely aligned with the Democrat Party and former President Bill Clinton." *Id.* at ¶ 37.  The Chief Justice was also "surprised by the moral outrage and popular sovereignty by citizens of Kansas that arose" from Hazlett's using his office "to protect prison officials from being exposed for their involvement in the rape, abuse and narcotics trafficking." *Id.* at ¶ 38.

With respect to the Kansas Attorney Discipline Prosecutor, Defendant Alexander Walczak ("Walczak"), the Complaint alleges Hazlett directed Walczak "to violate the clearly established Due Process rights of similarly situated Kansas attorneys to have a fair and impartial hearing regarding disciplinary office recommendations in the Kansas Supreme Court." *Id.* at ¶ 43.  Walczak did so by engaging in a pattern and practice of meeting with the Kansas Supreme Court justices' law clerks and arranging for them to write the disciplinary opinions in advance of the hearings.  *Id.* at ¶ 44.  The Complaint explains this is how Walczak "ended up announcing to a class of Jim Vanderbilt's district/county attorney peers in North East Kansas the specific findings and judgment against Vanderbilt before Jim Vanderbilt or his attorney knew the results and before the opinion was published by the court."[2]  *Id.*

Plaintiff contends he is suing the State Disciplinary Proceeding Defendants for violating his "federal constitutional rights, including his constitutional property right to pursue his trade under color of state law." *Id.* at ¶ 1.  Count One alleges that the State Disciplinary Proceeding Defendants violated 42 U.S.C. § 1983 by retaliating against Plaintiff for exercising his First Amendment rights in defending his client at trial and as acting as a witness on his client's direct

---

[2] The Complaint does not offer any details explaining who Jim Vanderbilt is or the nature of the ethics complaint against him.

appeal. Specifically, it alleges the Board members retaliated against Plaintiff by finding probable cause to discipline him, or alternately by assenting to finding probable cause against him, or alternately by not objecting to or disassociating themselves from the probable cause finding. *Id.* at ¶¶ 76-78. Hazlett allegedly retaliated by accepting the Chief Justice of the Kansas Supreme Court's plan to investigate, prosecute, and disbar Plaintiff. *Id.* at ¶ 81. And Walczak allegedly retaliated by filing a supplemental misconduct charge for failing to timely answer the original ethics complaint, despite knowing Plaintiff had timely filed his answer. *Id.* at ¶¶ 88-95.

Count Two makes similar allegations, alleging the State Disciplinary Proceeding Defendants violated § 1983 by retaliating against Plaintiff for exercising his First Amendment right to engage in protected advocacy, testimony, and association, by investigating and prosecuting him when they lacked cause to do so. *Id.* at ¶¶ 106, 110.

### Discussion

The State Disciplinary Proceeding Defendants argue that the Court should dismiss all claims against them because the Complaint fails to plead "coherent, plausible, non-conclusory factual allegations." Plaintiff responds that the district court judge previously assigned to this case "has firsthand knowledge of the widespread practice of the [D]efendants to extort Kansas licensed attorneys to unlawfully restrain their constitutionally protected speech" and "chill protected speech." Answer to State Defs.' Mots. to Dismiss (Doc. 18) at ¶¶ 3-5. Plaintiff then devotes seven pages of his brief to providing additional examples of attorneys Defendants allegedly mistreated during the disciplinary process.

Both of Plaintiff's counts against the State Disciplinary Proceeding Defendants allege retaliation. To plead a First Amendment retaliation claim under § 1983, a plaintiff must allege: "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that

activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009)

Drawing every reasonable inference in the Plaintiff's favor, the Court holds that the Complaint's allegations fail to satisfy at least the third element. As is clear from the Kansas Board for Discipline of Attorneys' report and Plaintiff's own affidavit, Plaintiff violated numerous ethical rules. Hence, Plaintiff's allegation that the State Disciplinary Proceeding Defendants pursuit of disciplinary charges against him was "substantially motivated" by his exercise of his First Amendment rights is completely implausible. Therefore, Counts One and Two—the only counts against these Defendants—must be dismissed. *Iqbal*, 556 U.S. at 679. Additionally, because there is simply no way Plaintiff can re-plead this allegations to state a plausible claim for relief against any of these Defendants, this dismissal is with prejudice. *See Staats v. Cobb*, 455 F. App'x 816, 818 (10th Cir. 2011).

## Conclusion

For the reasons discussed above, the motion is GRANTED. All claims against the State Disciplinary Proceeding Defendants are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Date:   March 10, 2015                              /s/ Greg Kays
                                                                    GREG KAYS, CHIEF JUDGE
                                                                    UNITED STATES DISTRICT COURT